UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

VICTORIA ROLLEY-RADFORD,

            Plaintiff,

      v.                                              21-CV-1229-LJV
                                                      DECISION & ORDER
MODERN DISPOSAL SERVICES, INC.,
*et al.*,

            Defendants.

―――――――――――――――――――――――

On November 17, 2021, the *pro se* plaintiff, Victoria Rolley-Radford, commenced

this action under 42 U.S.C. §§ 1981-1983, 42 U.S.C. § 1985, Title VII of the Civil Rights

Act of 1964, and New York State law.  Docket Item 1.  She alleges that the

defendants—Modern Disposal Services, Inc. ("Modern Disposal"), and two Modern

Disposal employees, Jerry Nole and Joe Coppola[1]—discriminated against her during

her employment with Modern Disposal and retaliated against her for objecting to that

discrimination.  *See id.*

On March 14, 2022, the defendants moved to dismiss most of Rolley-Radford's

claims under Federal Rule of Civil Procedure 12(b)(6).  Docket Item 3.  On April 4,

2022, Rolley-Radford responded to the motion to dismiss, Docket Item 6, and on April

19, 2022, the defendants replied, Docket Item 7.

―――――――――――――――――

[1] Although Rolley-Radford named "Joe Cappola" as a defendant, Docket Item 1,
his name apparently is spelled "Coppola," *see* Docket Item 3-8 at 7 n.1.  The Clerk of
the Court shall correct the caption accordingly.

For the reasons that follow, the defendants' motion to dismiss is granted in part and denied in part, and the remainder of the defendants' motion will be granted unless Rolley-Radford amends her complaint to correct the deficiencies noted below.

## FACTUAL BACKGROUND[2]

Rolley-Radford "is an African-American woman."  Docket Item 1 at ¶ 10.  She "began working for [Modern Disposal] in November of 2018 as a truck driver."  *Id.* at ¶ 17.  Rolley-Radford "enjoyed a good working relationship with management, performed her job without incident, and received positive job performance reviews from November of 2018 until February of 2021."  *Id.* at ¶ 18.

On February 18, 2021, Rolley-Radford "was approached by" Nole, a "senior management employee" at Modern Disposal and Rolley-Radford's supervisor, about "sexual favors" and "sexual advances."  *Id.* at ¶¶ 15, 19.  More specifically, Nole offered to "eliminat[e] a fictitious complaint about [Rolley-Radford's] performance in exchange for sexual favors."  *Id.* at ¶ 19.  He "also cautioned [Rolley-Radford] that her advancement with the company would be [] hampered if she did not succumb to his sexual advances."  *Id.*

Rolley-Radford "refused to comply with . . . Nole's advances" and instead "reported his outrageous conduct to senior management of [Modern Disposal], including" Coppola.  *Id.* at ¶ 20.  About four months later, Rolley-Radford "was

---

[2] The following facts are taken from the complaint, Docket Item 1.  On a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

suspended from her employment . . . without cause or notice." *Id.* at ¶ 21.  Rolley-Radford says that this suspension was "retaliation [for] her refusal to comply with the sexual demands of [] Nole[,] which started in February of 2021 and continued until her suspension." *Id.*  Four days after she was suspended, Rolley-Radford was fired from Modern Disposal "after having served [Modern Disposal with] a copy and notice of her complaint with the Equal Employment Opportunity Commission [("EEOC")]." *Id.* at ¶ 22.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that tenet 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

Rolley-Radford brings claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985, Title VII, and the New York State Human Rights Law ("NYSHRL"), as well as claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract.  Docket Item 1 at ¶¶ 24-82.  The defendants have moved to dismiss all of Rolley-Radford's claims except her sex- or gender-based discrimination claim under section 1981, her retaliation claim under Title VII, and her sex-based discrimination and retaliation claims under the NYSHRL.[3]  Docket Item 3-8 at 9.

---

[3] Throughout her complaint, Rolley-Radford alleges that she was discriminated against because of her age.  *See, e.g.*, Docket Item 1 at ¶¶ 2, 46.  But she did not bring a separate cause of action for age-based discrimination, nor did she allege any facts—including, for example, her age—that would support an age-based discrimination claim.  *See generally* Docket Item 1.  The defendants therefore have moved to dismiss any age-based discrimination claim as insufficiently pleaded.  *See* Docket Item 3-8 at 13-14.  They also argue that Rolley-Radford has not exhausted her administrative remedies on any age-based discrimination claim.  *Id.* at 14-15; *see* Docket Item 3-3.

To the extent that Rolley-Radford raises an age-based discrimination claim, that claim is subject to dismissal because the complaint does not include any allegations that would support such a claim.  *See, e.g.*, *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (finding age-based discrimination claim insufficiently pleaded where the plaintiff "offer[ed] no details that would support any inference of age discrimination, such as the executives' ages or the dates and stated reasons for their terminations").  If Rolley-Radford intends to bring an age-based discrimination claim, she may do so in any amended complaint.  And if she does that, she also should allege facts showing that she exhausted her administrative remedies on that claim or, if not, why this Court can entertain that claim now.  *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies . . . is an essential element of the Title VII and [Age Discrimination in Employment Act] statutory schemes and, as such, a precondition to bringing such claims in federal court." (citation and internal quotation marks omitted)).

For the reasons that follow, the defendants' motion to dismiss is denied with respect to Rolley-Radford's section 1981 race-based retaliation claim and her NYSHRL race-based retaliation claim.  But Rolley-Radford's section 1981 sex- or gender-based discrimination and retaliation claims and her section 1982 claim are dismissed without leave to amend.[4]  And Rolley-Radford's section 1981 race-based discrimination claim, section 1983 claim, section 1985 claim, NYSHRL race-based discrimination claim, intentional and negligent infliction of emotional distress claims, and breach of contract claim are subject to dismissal, but she may amend those claims to correct the deficiencies noted below.[5]

---

[4] Although the defendants did not move to dismiss Rolley-Radford's section 1981 sex- or gender-based claims, Docket Item 3-8 at 9, those claims are not viable for the reasons stated below.  Because any further amendment of those claims would be futile, they are dismissed without leave to amend.  *See Bergrin v. United States*, 2022 WL 912280, at *14 (S.D.N.Y. Mar. 28, 2022) ("While leave to amend the complaint should be freely given when dismissing a *pro se* complaint *sua sponte*, the dismissal can be without leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" (italicization added) (quoting *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019))).  If Rolley-Radford intends to bring sex- or gender-based discrimination and retaliation claims under some other statute, she may do so in any amended complaint.

[5] In her response to the defendants' motion to dismiss, Rolley-Radford "request[s] leave to amend the [c]omplaint to correct the pleadings or cure any deficiencies found by the Court."  Docket Item 6 at 2.  The defendants argue that Rolley-Radford's request for leave to amend should be denied because she did not attach a proposed amended complaint to her response and, in any event, because leave to amend "will not be productive."  Docket Item 7 at 5-8.  Because Rolley-Radford is proceeding *pro se*, she may amend her claims as stated below.  *See Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) ("[D]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend . . . .").  But leave to amend certain claims is denied as "futile."  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

I.     **SECTION 1981**

Rolley-Radford brings claims under 42 U.S.C. § 1981, alleging that the defendants discriminated and retaliated against her on the basis of her race and sex or gender.[6]  Docket Item 1 at ¶¶ 24-37.  For the reasons stated below, only her race-based retaliation claim under section 1981 may proceed.

A.     **Race-Based Discrimination and Retaliation**

1.     **Discrimination**

Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981.  Section 1981 "thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).  Section 1981 disparate treatment claims are analyzed under the burden-shifting framework that applies to Title VII claims.  *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

---

[6] Although Rolley-Radford's claims under section 1981 are captioned "race discrimination" and "sex/gender discrimination," Docket Item 1 at 7-8 (capitalization removed), she also alleges that the defendants retaliated against her in violation of section 1981, *see id.* at ¶¶ 25, 32.  The Court therefore construes the complaint as alleging retaliation claims under section 1981.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[S]ubmissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (citation and internal quotation marks omitted)).

To establish a *prima facie* disparate treatment claim under section 1981, a plaintiff "must show that '(1) [she] belonged to a protected class; [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Cano v. SEIU Local 32BJ*, 2021 WL 4480274, at *7 (S.D.N.Y. Sept. 30, 2021) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)). "To prevail" on a claim under section 1981, "a plaintiff [also] must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).   But a plaintiff's allegations do not have to establish a *prima facie* case in order to survive a motion to dismiss; instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

Rolley-Radford alleges that she was "disparate[ly] treat[ed] because of her race" and that "similarly situated white employees" were treated better. *See* Docket Item 1 at ¶¶ 25, 27.   "To support a minimal inference of discrimination, a plaintiff may allege disparate treatment by showing the more favorable treatment of employees not in the protected group who are similarly situated in all material respects." *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) (citations and internal quotation marks omitted).   But beyond her conclusory allegations that "similarly situated white employees" were treated differently, Docket Item 1 at ¶ 25, Rolley-Radford has not alleged anything about any employees outside her protected class who were treated more favorably.   And that is not enough to survive a motion to dismiss.   *See Wolfinger v. Consol. Edison Co. of N.Y.*, 2018 WL 3637964, at *9 (E.D.N.Y. July 31, 2018) ("While

the law does not require detailed pleadings regarding the similarly situated comparators, the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated." (citations and internal quotation marks omitted)). Nor has Rolley-Radford raised an inference of discrimination by alleging that she was replaced by an employee outside her protected class after her termination. *See Littlejohn*, 795 F.3d at 312-13 ("[A]n inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class.").

For those reasons, Rolley-Radford's section 1981 race-based discrimination claim is subject to dismissal. *See Henry v. County of Nassau*, 6 F.4th 324, 335-36 (2d Cir. 2021) ("In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."). Nevertheless, and in light of her *pro se* status, Rolley-Radford may amend her complaint to state a viable section 1981 discrimination claim. *See Cuoco*, 222 F.3d at 112.

### 2. Retaliation

In addition to barring racial discrimination in certain activities, "[s]ection 1981[ also] encompass[es] retaliation claims." *Littlejohn*, 795 F.3d at 315 n.14 (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)); *see also Callahan v. Consol. Edison Co. of N.Y.*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) ("Section 1981 protects the right of employees to voice complaints regarding treatment that they, in good faith, believe violated their rights under [s]ection 1981 by prohibiting retaliation in the wake of such complaints."). A retaliation claim under section 1981 is similarly evaluated under

the burden-shifting framework that applies to Title VII retaliation claims.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  To establish a *prima facie* case of retaliation, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant[s] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Id.*; *see also Cano*, 2021 WL 4480274, at *9 (same).

"As with discrimination claims, at the motion to dismiss stage, the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of litigation."  *Cano*, 2021 WL 4480274, at *9 (citation and internal quotation marks omitted).  So "for a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [she] has opposed any unlawful employment practice."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

The defendants do not separately address any retaliation claim under section 1981; instead, they argue that "the [c]omplaint is utterly bereft of any factual allegations to support a claim of race discrimination, or that the actions [Rolley-Radford] complains of were undertaken because of her race."  Docket Item 3-8 at 6.  But a retaliation claim under section 1981 is based on an employer's retaliation against an employee for "participat[ing] in a protected activity," not an employee's race itself.  *See Hicks*, 593 F.3d at 164.  Here, Rolley-Radford says that she "served [Modern Disposal]" with a "copy and notice of her complaint with the [EEOC]" and was then immediately fired.  *See* Docket Item 1 at ¶ 22.  And Rolley-Radford's EEOC charge alleged that she was

discriminated against on the basis of race.  Docket Item 3-3.  Based on those allegations, Rolley-Radford has pleaded a viable race-based retaliation claim under section 1981.  *See Ebanks v. Neiman Marcus Grp., Inc.*, 414 F. Supp. 2d 320, 332 (S.D.N.Y. 2006) (filing EEOC complaint is protected activity under section 1981); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." (alterations omitted)).

## B.    Sex- or Gender-Based Discrimination and Retaliation

Although the defendants have not moved to dismiss Rolley-Radford's sex- or gender-based discrimination and retaliation claims under section 1981, *see* Docket Item 3-8 at 9, those claims are not viable because section 1981 does not protect against discrimination or retaliation on the basis of sex or gender.  *See, e.g.*, *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is [] settled that [s]ection 1981 does not prohibit discrimination on the basis of gender . . . ."); *Sanderson v. Leg Apparel LLC*, 2023 WL 2753200, at *12 n.12 (S.D.N.Y. Mar. 31, 2023) ("Section 1981[] protects only against race-based discrimination and retaliation.").  If Rolley-Radford intends to bring sex- or gender-based discrimination claims under some other statute—for example, Title VII—she may do so in any amended complaint.[7]  But her sex- or gender-based

---

[7] As mentioned above, Rolley-Radford already raises a retaliation claim under Title VII, but she does not raise a discrimination claim under that statute.  *See* Docket Item 1 at ¶¶ 56-60.

discrimination and retaliation claims under section 1981 are dismissed without leave to amend.  *See Cuoco*, 222 F.3d at 112.

## II.   NYSHRL

Rolley-Radford also brings claims for "race, age and sex discrimination," as well as retaliation, under the NYSHRL.  Docket Item 1 at ¶¶ 76-82.  The defendants have moved to dismiss any NYSHRL race- or age-based discrimination or retaliation claims. Docket Item 3-8 at 9.  For largely the same reasons as those stated above, Rolley-Radford's race-based retaliation claim is viable, but her race-based discrimination claim, as well as her age-based claims, are not.[8]

Courts "have traditionally analyzed employment discrimination claims under [section] 1981 together with those brought under the NYSHRL."  *Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (citing *Brown*, 673 F.3d at 150).  "But the NYSHRL was amended in 2019 to 'be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed.'"  *Id.* (quoting N.Y. Exec. Law § 300).  Since then, "some courts in this Circuit 'have interpreted the amendment as rendering the standard for claims closer to the standard of the [New York City Human Rights Law ("NYCHRL")].'"  *Id.* (quoting *Kaye v. N.Y.C. Health & Hosps. Corp.*, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023)).  To establish a claim under that more lenient standard,

---

[8] Because Rolley-Radford has not pleaded any facts to show how she was discriminated against on the basis of age, *see supra* at 4 n.3, Rolley-Radford's age-based discrimination claim under the NYSHRL is subject to dismissal.

a plaintiff "need only show differential treatment—that [she] was treated less well—because of a discriminatory intent." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 234 (S.D.N.Y. 2021) (citation and internal quotation marks omitted).

While Rolley-Radford's NYSHRL race-based discrimination claim might therefore be evaluated under a more lenient standard than her section 1981 race-based discrimination claim, that claim still fails for the same reasons stated above—namely, she has not "allege[d] facts giving rise to even a minimal inference of [racially] discriminatory motivation with respect to her termination." *Cooper*, 2023 WL 3882977, at *3 (affirming dismissal of discrimination claims under the NYSHRL "because . . . [the p]laintiff's employment discrimination claims fall short even under the NYCHRL's more liberal standards").  Rolley-Radford provides no information about the "similarly situated white employees" that she refers to in passing, *see* Docket Item 1 at ¶ 25, and she offers no other factual allegations that would establish an inference of discrimination. Her NYSHRL claim for race-based discrimination therefore is subject to dismissal. Nevertheless, and again in light of her *pro se* status, Rolley-Radford may amend her complaint to state a viable race-based discrimination claim under the NYSHRL.  *See Cuoco*, 222 F.3d at 112.

And for many of the same reasons stated above, Rolley-Radford's race-based retaliation claim under the NYSHRL survives.  Before the 2019 amendments to the NYSHRL, courts generally evaluated NYSHRL retaliation claims under the standards that applied to retaliation claims under federal employment discrimination law.  *See, e.g.*, *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 (S.D.N.Y. 2020). After those amendments, some courts have applied the more lenient standard that

applies to NYCHRL retaliation claims to NYSHRL retaliation claims.  *See, e.g.*, *Forrest v. N.Y.C. Hous. Auth.*, 2023 WL 3203646, at *4 (S.D.N.Y. May 2, 2023) ("[A] plaintiff may assert a NYSHRL or NYCHRL retaliation claim by alleging that 'she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)); *see also Arazi v. Cohen Bros. Realty Corp.*, 2022 WL 912940, at *17 (S.D.N.Y. Mar. 28, 2022).  Regardless, because Rolley-Radford has pleaded a viable race-based retaliation claim under section 1981, her NYSHRL race-based retaliation claim may proceed as well.

## III.    SECTION 1982

Rolley-Radford also alleges that the defendants violated 42 U.S.C. § 1982 by discriminating against her because of race, sex, and age.  Docket Item 1 at ¶¶ 38-44. Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  "To prevail on a section 1982 claim, [a] plaintiff[] must show that (1) [she is a] member[] of a racial minority; (2) the defendant intended to discriminate against [her] on the basis of race; and (3) the discrimination involved one or more activities enumerated in the statute." *Okudinani v. Rose*, 779 F. App'x 768, 771 (2d Cir. 2019) (summary order).  So "[a] plaintiff states a viable cause of action under [section] 1982 only by alleging a deprivation of [her] rights on account of [her] race, ancestry, or ethnic characteristics." *Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987); *see also Comcast*, 140

S. Ct. at 1016 ("[The Supreme Court] has repeatedly held that a claim arises under [section] 1982 when a citizen is not allowed to acquire property *because of* color." (emphasis in original) (alterations, citation, and internal quotation marks omitted)).

For the reasons stated above, Rolley-Radford has not alleged any facts showing that she was discriminated against because of her race.  But more to the point, section 1982 covers only real and personal property and "has no application to claims of employment discrimination."  *Cordell v. Unisys Corp.*, 66 F. Supp. 3d 363, 364 (W.D.N.Y. 2014) (alterations, citation, and internal quotation marks omitted); *see also Kathuria v. Dental Dreams, LLC*, 2018 WL 11513128, at *4 (D. Mass. Feb. 6, 2018) ("Section 1982, by its own terms, concerns only rights to 'purchase, lease, sell, hold, and convey real and personal property.'  Those rights are in no way implicated by [the p]laintiff's allegations concerning her employment at Dental Dreams."); *Edwards v. Smitty's Supply, Inc.*, 2016 WL 3667361, at *4 (E.D. La. July 11, 2016) ("Courts in the Fifth Circuit and beyond have uniformly held that employment rights do not fall within the category of property protected by [s]ection 1982.").  Because Rolley-Radford's allegations all relate to her job at Modern Disposal and not any real or personal property, her section 1982 claim is dismissed without leave to amend.  *See Cuoco*, 222 F.3d at 112.

## IV.    SECTION 1983

Rolley-Radford also brings a claim under section 1983 and alleges that the defendants violated her rights under the First, Fourth, Fifth, Sixth, and Fourteenth

Amendments.[9]   *See* Docket Item 1 at ¶¶ 45-47.  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  Generally, the "United States Constitution regulates only the [g]overnment, not private parties."  *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014); *see also Phillips v. Sage Colls.*, 83 F. App'x 340, 341 (2d Cir. 2003) (summary order) ("With the exception of the Thirteenth Amendment prohibition against slavery, the United States Constitution regulates only government action, not that of private parties.").  So when a plaintiff brings a claim under section 1983 and "alleges that her constitutional rights have been violated," she "must first establish that the challenged conduct constitutes state action."  *Grogan*, 768 F.3d at 263 (citation and internal quotation marks omitted).

The Second Circuit has "identified three main tests to determine" whether an otherwise private entity has engaged in state action:

> "(1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in

---

[9] Rolley-Radford refers to a number of constitutional amendments throughout her complaint, including in her claims under 42 U.S.C. §§ 1981 and 1982.  *See* Docket Item 1 at 7 (First, Fourth, Fifth, Sixth, and Fourteenth Amendments); 8 (same); 10 (Fourth, Fifth, Sixth, and Fourteenth Amendments).  Because Rolley-Radford is proceeding *pro se*, the Court liberally construes those allegations as raising a claim under section 1983. *See, e.g.*, *Williams v. City of New York*, 690 F. Supp. 2d 338, 346 (S.D.N.Y. 2010) ("Section 1983 provides a plaintiff a vehicle for the redress of violations of his or her constitutional rights when such violations are carried out by persons acting under color of state law." (alterations, citation, and internal quotation marks omitted)); *see also Triestman*, 470 F.3d at 474.

joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); and (3) when the entity has been delegated a public function by the state ('the public function test')."

*Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022) (alterations omitted) (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Rolley-Radford's complaint does not adequately allege that Modern Disposal or the two individual defendants are state actors under any standard. Although Rolley-Radford alleges that the defendants "engaged in a conspiracy with defendant Buffalo Public Schools District" and therefore "act[ed] under color of state law," Docket Item 1 at ¶ 50, "Buffalo Public Schools District" is not a defendant in this case, and it is unclear how "Buffalo Public Schools District"—which does not otherwise appear in the complaint—is at all relevant to Rolley-Radford's claims. And Rolley-Radford has not alleged anything else to show how the defendants could be liable under section 1983; on the contrary, Rolley-Radford alleges that Modern Disposal "is a corporation formed and operat[ing] under the laws of the State of New York" and that the individual defendants are employees of Modern Disposal. *Id.* at ¶¶ 13, 15-16.

Because Rolley-Radford brings employment discrimination claims against a private company and two of its employees, and because she has not shown how any of those allegations relate to any acts that would be "fairly attributable to the state," *see Fabrikant*, 691 F.3d at 207 (citation and internal quotation marks omitted), her section 1983 claim is subject to dismissal. Although that claim does not seem to be viable in

16

any form, the Court will give Rolley-Radford an opportunity to amend her complaint to allege how the defendants might be liable for violating her constitutional rights.  *See Cuoco*, 222 F.3d at 112.

## V.   SECTION 1985

Rolley-Radford alleges that the defendants violated 42 U.S.C. § 1985 by conspiring to deprive her of her rights.  Docket Item 1 at ¶¶ 48-51.  To bring a conspiracy claim under section 1985, a plaintiff must allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006).  "A section 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Id.* (citation and internal quotation marks omitted).

Rolley-Radford provides only conclusory allegations in support of her section 1985 conspiracy claim.  *See, e.g.*, Docket Item 1 at ¶ 49 ("[The d]efendants, acting jointly and severally, knowing[ly] and intentionally, agreed and conspired to adversely impact [the] plaintiff's employment, employment opportunities, promotional opportunities, and past and future wages . . . all with an objective to deprive [the] plaintiff [of] her constitutional rights.").  As mentioned above, Rolley-Radford's assertion that the defendants "engaged in a conspiracy with defendant Buffalo Public Schools District" is unsupported by any other allegations in the complaint.  *See id.* at ¶ 50.  And "[i]t is well settled that claims of conspiracy containing only conclusory, vague, or

general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also L.K. v. Sewanhaka Central High Sch. Dist.*, 641 F. App'x 56, 59 (2d Cir. 2016) (summary order) (affirming dismissal of section 1985 conspiracy "because [the] plaintiffs have . . . failed to plead facts supporting their conclusory assertion that [the] defendants had an 'express understanding or tacit agreement'").

Rolley-Radford's section 1985 conspiracy claim therefore is subject to dismissal. Nevertheless, and again in light of her *pro se* status, she may amend her complaint to state a viable claim under section 1985.[10]  *See Cuoco*, 222 F.3d at 112.

## VI.    EMOTIONAL DISTRESS

Rolley-Radford also brings claims for intentional and negligent infliction of emotional distress.  Docket Item 1 at ¶¶ 61-70.  For the reasons stated below, neither claim is viable as pleaded.

### A.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under New York State law, a plaintiff must allege (1) "extreme and outrageous conduct"; (2) "intent to

---

[10] The defendants also argue that Rolley-Radford's section 1985 claim is barred by the intracorporate conspiracy doctrine.  *See* Docket Item 3-8 at 21.  "[U]nder the intracorporate conspiracy doctrine, the 'officers, agents, and employees of a single corporate entity are legally incapable of conspiring together.'"  *Murphy v. City of Stamford*, 634 F. App'x 804, 805 (2d Cir. 2015) (summary order) (quoting *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008)).  Because Rolley-Radford's conspiracy claim is subject to dismissal for the reasons stated above, the Court does not decide whether it also is barred by the intracorporate conspiracy doctrine.

cause, or disregard of a substantial probability of causing, severe emotional distress";

(3) "a causal connection between the conduct and injury"; and (4) "severe emotional

distress."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993)).  "Liability

[for intentional infliction of emotional distress] has been found only where the conduct

has been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized society."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting

*Howell*, 81 N.Y.2d at 122, 612 N.E.2d at 702).  Intentional infliction of emotional distress

"remains a highly disfavored tort under New York law," and it therefore "is to be invoked

only as a last resort."  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014)

(alterations, citation, and internal quotation marks omitted); *see also Salmon v. Blesser*,

802 F.3d 249, 256 (2d Cir. 2015) ("[A]n intentional infliction tort may be invoked only as

a last resort, to provide relief in those circumstances where traditional theories of

recovery do not." (citations and internal quotation marks omitted)).

      "In the rare instances where New York courts have recognized a claim for

[intentional infliction of emotional distress] in the employment context, the claims have

alleged not merely sexual harassment, but more significantly, battery."  *Chau v.

Donovan*, 357 F. Supp. 3d 276, 287 (S.D.N.Y. 2019) (alterations omitted) (quoting

*Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 529 (S.D.N.Y.

2000)).  Here, Rolley-Radford alleges that she was approached with sexual demands

from Nole and was terminated for her refusal to comply with those demands.  *See*

Docket Item 1 at ¶¶ 19-22.  But she provides no further details about those demands,

nor does she allege any other conduct that might support a claim for intentional infliction of emotional distress.

Because Rolley-Radford has not alleged conduct sufficiently outrageous to sustain a claim for intentional infliction of emotional distress, that claim is subject to dismissal.  *See Truman v. Brown*, 434 F. Supp. 3d 100, 121 (S.D.N.Y. 2020) ("New York courts—while recognizing that sexual harassment may, on rare occasions, constitute a basis for [intentional infliction of emotional distress]—have found crude and offensive statements of a sexually derisive nature not to rise to the level of extreme and outrageous." (citations and internal quotation marks omitted)); *cf. Chau*, 357 F. Supp. 3d at 287-89 (denying motion to dismiss intentional infliction of emotional distress claim based on "alleged acts of sexual battery and continued sexual harassment [that] were related to emotional distress experienced by [the plaintiff]").  Nevertheless, and again in light of her *pro se* status, Rolley-Radford may amend her complaint to state a viable claim for intentional infliction of emotional distress.  *See Cuoco*, 222 F.3d at 112.

### B.    Negligent Infliction of Emotional Distress

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm."  *Francis v. Kings Park Manor*, 992 F.3d 67, 81 (2d Cir. 2021).  "To establish the fourth element, the plaintiff generally must plead that the breach endangered [her] physical safety or caused [her] to fear for [her] physical safety."  *Id.* at 81 n.57.

Generally, "a plaintiff may establish a claim for negligent infliction of emotional distress in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (alterations omitted).  "Under the 'bystander' theory," a plaintiff may recover for injures "resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence."  *Id.*  "Under the 'direct duty' theory, a plaintiff suffers emotional distress caused by [the] defendant's breach of a duty which unreasonably endangered [the] plaintiff's own physical safety."  *Id.* (alterations, citation, and internal quotation marks omitted).  Beyond those two theories, "New York also recognizes a cause of action in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.'"  *Id.* (alterations omitted) (quoting *Johnson v. State*, 37 N.Y.2d 378, 382, 334 N.E.2d 590, 592 (1975)).

Rolley-Radford has not pleaded a viable claim for negligent infliction of emotional distress under any theory.  First, her complaint alleges nothing to suggests that the "bystander" theory of liability would apply.  Second, Rolley-Radford has not alleged any facts showing how the defendants "unreasonably endangered [her] physical safety," *Baker*, 239 F.3d at 421, so the "direct duty" theory of liability is inapposite.  Finally, "alleged workplace discrimination does not constitute 'special circumstances' that confer a 'guarantee of genuineness'" under the third possible theory of recovery.  *See Sanderson v. Leg Apparel LLC*, 2020 WL 3100256, at *12 (S.D.N.Y. June 11, 2020) (quoting *Baker*, 239 F.3d at 421); *see also Alaei v. State Univ. of N.Y. at Albany*, 2022

21

WL 4094450, at *11 (N.D.N.Y. Sept. 7, 2022) ("[C]ourts have frequently held that similar circumstances concerning the termination of employment were not sufficient special circumstances to constitute a negligent infliction of emotional distress claim." (citation and internal quotation marks omitted); *cf. Johnson*, 37 N.Y.2d at 382, 334 N.E.2d at 592 (recognizing claim under third theory based on hospital's falsely informing relatives of patient's death).

For those reasons, Rolley-Radford's negligent infliction of emotional distress claim is not viable.[11]  Nevertheless, and again in light of her *pro se* status, Rolley-Radford may amend her complaint to allege a viable claim for negligent infliction of emotional distress.  *See Cuoco*, 222 F.3d at 112.

## VII.   BREACH OF CONTRACT

Finally, Rolley-Radford brings a claim for breach of contract, presumably under New York State law.  Docket Item 1 at ¶¶ 71-75.  "To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  "An essential requirement to stating [a] claim [for breach of contract] is alleging a specific provision that was breached."  *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014) (citation and internal quotation marks omitted)); *see also Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 350 (S.D.N.Y.

---

[11] Because Rolley-Radford has not pleaded a viable negligent infliction of emotional distress claim, the Court does not reach the defendants' argument that any such claim is barred by the New York Workers' Compensation Law.  Docket Item 3-8 at 24-25.

2021) ("To plausibly allege a breach of contract, a plaintiff must identify the specific provisions of the contract upon which liability is predicated." (citation and internal quotation marks omitted)).  That is, "a breach of contract claim will be dismissed as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated."  *Scanni v. N.Y. Life Ins. & Annuity Co.*, 2023 WL 2710921, at *4 (E.D.N.Y. Mar. 30, 2023) (alterations, citation, and internal quotation marks omitted).

Rolley-Radford alleges that she "entered into a contract with [Modern Disposal]" and that the defendants "breached [that] contract upon the suspension of [Rolley-Radford] without just cause, without notice and in reckless disregard for the terms and conditions of the contract."  Docket Item 1 at ¶¶ 72-73.  Beyond those general allegations, however, Rolley-Radford does not "identify the specific contract term or terms that [the defendants] allegedly breached."  *See Manes v. JPMorgan Chase Bank, N.A.*, 2022 WL 671631, at *7 (S.D.N.Y. Mar. 7, 2022).  And without any such allegations, Rolley-Radford's breach of contract claim is subject to dismissal.  *See id.*; *see also Brown v. Twitter, Automattic Inc.*, 2021 WL 3887611, at *8 (S.D.N.Y. Aug. 31, 2021) (dismissing breach of contract claim brought by *pro se* plaintiff because the plaintiff failed to "identify[] specific contractual provisions that were breached by [the] defendant's conduct").  In light of her *pro se* status, however, Rolley-Radford may amend her complaint to state a viable breach of contract claim.  *See Cuoco*, 222 F.3d at 112.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss, Docket Item 3, is GRANTED in part and DENIED in part.  Rolley-Radford's section 1982 claim, as well as her section 1981 sex- or gender-based discrimination and retaliation claims, are dismissed without leave to amend.  The defendants' motion to dismiss Rolley-Radford's section 1981 and NYSHRL race-based retaliation claims is denied.  Rolley-Radford's age-based discrimination claims, section 1981 and NYSHRL race-based discrimination claims, section 1983 claim, section 1985 claim, intentional infliction of emotional distress claim, negligent infliction of emotional distress claim, and breach of contract claim will be dismissed without further order unless Rolley-Radford files an amended complaint within 45 days of the date of this order that corrects the deficiencies noted above.  No later than 30 days after any amended complaint is filed, the defendants may answer, move against, or otherwise respond to the amended complaint.


SO ORDERED.

Dated:   August 9, 2023
         Buffalo, New York


_/s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE