UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VICTORIA ROLLEY,[1]

        Plaintiff,

    v.

MODERN DISPOSAL SERVICES, INC.,
*et al.*,

        Defendants.

21-CV-1229-LJV
DECISION & ORDER

---

    The *pro se* plaintiff, Victoria Rolley, asserts discrimination and retaliation claims arising from her employment with defendant Modern Disposal Services, Inc. ("Modern Disposal"). Docket Item 1; Docket Item 13 (amended complaint). She sues Modern Disposal and two of its employees, Jerry Nole and Joe Coppola, under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and New York State common law.[2] Docket Item 13.

    After the defendants moved to dismiss the complaint and that motion was fully briefed, this Court granted the motion in part, denied it in part, and gave Rolley leave to amend. *See* Docket Item 8. On November 9, 2023, Rolley amended her complaint, Docket Item 13; on November 30, 2023, the defendants moved to partially dismiss the

---

[1] The plaintiff commenced this action under the name "Victoria Rolley-Radford," Docket Item 1, but she "no longer goes by her former married name," Docket Item 13 at 1 n.1.

[2] Rolley's original complaint asserted claims under 42 U.S.C. §§ 1981-1983 and 1985. Docket Item 1. Because those claims are not reasserted in the amended complaint, *see* Docket Item 13, they are dismissed as withdrawn.

amended complaint, Docket Item 14; on January 19, 2024, Rolley responded, Docket Item 16; and on February 1, 2024, the defendants replied, Docket Item 17.

For the reasons that follow, the defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND[3]

In November 2018, Rolley, "an African American woman," was hired by Modern Disposal "as a truck driver." Docket Item 13 at ¶¶ 1, 7, 11. From the beginning of her employment until early 2021, Rolley had "a good working relationship with management, performed her job without incident, and received positive job performance reviews." *Id.* at ¶ 12. In the middle of February 2021, however, Nole—a supervisor and member of "senior management," *id.* at ¶ 9—"approached" Rolley and offered to "eliminat[e] a fictitious complaint about her performance in exchange for sexual favors," *id.* at ¶ 13. He also suggested that Rolley "should engage in an extracurricular relationship with him" because he had "approved [Rolley's] recently submitted request for time off." *Id.*

Rolley "reported this incident to Human Resources" ("HR") and to Coppola, *id.* at ¶ 14, another member of "senior management," *id.* at ¶ 10. "After speaking with . . . Nole and another witness, Larry, who overheard the exchange, HR concluded that the comment was in fact made." *Id.* at ¶ 14. But "[d]espite investigating and confirming

---

[3] The following facts are taken from the amended complaint, Docket Item 13. On a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

[Rolley's] allegations," Modern Disposal continued to allow Nole to supervise Rolley, leading to additional harassment by Nole.  *Id.* at ¶ 15.  For example, "Nole would make side comments about [Rolley's] using her earned paid time off . . . [and] would make false accusations about her work performance, her attendance, and other similar statements regarding her duties."  *Id.* (emphasis omitted).  Nole also continued to "make sexual comments and advances," which Rolley "rebuffed."  *Id.*

In early June 2021, Rolley told HR and Coppola "that due to her growing discomfort, frustration, and distress caused by this hostile environment, she had no choice but to file a formal complaint with the EEOC [Equal Employment Opportunity Commission]."  *Id.* at ¶ 17.  Modern Disposal "immediately suspended [Rolley] the same day without cause, reason, or justification."  *Id.*  "Four days later, she was fired."  *Id.*

On June 7, 2021, Rolley filed a charge of discrimination with the EEOC and the New York State Division of Human Rights.  *Id.* at 13.  She amended that charge a few weeks later to add allegations of retaliation.  *Id.* at 14.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A]lthough 'a

3

court must accept as true all of the allegations contained in a complaint,' that tenet 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Rolley's amended complaint asserts five causes of action: (1) a Title VII claim for sex discrimination, Docket Item 13 at ¶¶ 18-21; (2) a Title VII claim for retaliation, *id.* at ¶¶ 22-24; (3) an NYSHRL claim for sex discrimination, *id.* at ¶¶ 25-26; (4) an NYSHRL claim for retaliation, *id.* at ¶¶ 27-28; and (5) a state law claim for negligent infliction of emotional distress, *id.* at ¶¶ 29-31. The defendants have moved to dismiss the Title VII claims against Nole and Coppola, all sex discrimination claims, the negligent infliction of emotional distress claim, and all other claims against Coppola. Docket Item 14-3 at 6.

## I.     TITLE VII CLAIMS AGAINST NOLE AND COPPOLA

As Rolley concedes, *see* Docket Item 16 at ¶ 5, "[i]ndividuals are not subject to liability under Title VII," *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) (citation omitted); *see Felton v Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 406 (W.D.N.Y. 2022) ("It is well-settled that there is no individual liability under Title VII." (collecting cases)). Rolley's Title VII claims against Nole and Coppola therefore are dismissed.

## II.    SEX DISCRIMINATION CLAIMS

Rolley asserts sex discrimination claims under both Title VII, Docket Item 13 at ¶¶ 18-21, and the NYSHRL, *id.* at ¶¶ 25-26, based on Nole's alleged sexual

harassment. There are two types of sexual harassment claims: (1) *quid pro quo* and (2) hostile work environment. *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994). The defendants argue that Rolley has "fail[ed] to state a valid claim" under either theory. Docket Item 14-3 at 12-17. This Court agrees with respect to Rolley's *quid pro quo* harassment claims, but her hostile work environment claim survives.

### A. *Quid Pro Quo*

*Quid pro quo* sexual harassment "occurs 'when submission to or rejection of improper or unwelcome sexual conduct by an individual is used as the basis for employment decisions affecting such individual.'" *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 108 (E.D.N.Y. 2011) (citation omitted); *see Karibian*, 14 F.3d at 777 ("[T]o establish a *prima facie* case of *quid pro quo* harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions[,] or privileges of her employment." (collecting cases)). The standard is the same for claims brought under Title VII and the NYSHRL. *See Friederick v. Passfeed, Inc.*, 2022 WL 992798, at *7 (S.D.N.Y. Mar. 31, 2022).

The defendants argue that Rolley has failed to state a *quid pro quo* sexual harassment claim because she "has not alleged that she was denied an economic benefit either due to her gender or because a sexual advance was made by her supervisor and rejected by her." Docket Item 14-3 at 14. In fact, they say, "the only arguable adverse employment actions she even complains of . . . —her suspension and termination—were not plausibly alleged to have been based on her sex, but instead

based on her alleged intent to file an EEOC claim for sex discrimination." *Id.* at 14-15 (citing Docket Item 13 at ¶¶ 24, 28).

This Court agrees.  Rolley alleges that Nole discriminated against her based on her gender when he made "comments" and "false accusations" about her work performance and use of vacation time.  Docket Item 13 at ¶ 15; *see* Docket Item 16 at ¶ 7 (asserting that Nole "verbal[ly] scold[ed]" Rolley and issued "unsubstantiated write-ups and complaints" after "she rebuffed his advances").  Nole's alleged conduct may have been distressing, but Rolley does not allege that it was "the basis for employment decisions" that affected her.  *See Alexander*, 829 F. Supp. 2d at 108.  In fact, while she alleges that she was scolded and falsely criticized because she did not give in to her supervisor's advances, that is insufficient for a claim of *quid pro quo* harassment.  *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006) (explaining that a "tangible employment action" sufficient to sustain a *quid pro quo* harassment claim is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (citations omitted)).  And Rolley does not allege that she suffered any changes in her employment until she was terminated in retaliation for complaining about Nole.  *See generally* Docket Item 13.

In other words, Rolley's has not alleged *quid pro quo* sexual harassment, and her claims based on that theory therefore are dismissed.  *See Alexander*, 829 F. Supp. 2d at 108 (explaining that if a *quid pro quo* claim "involves only unfulfilled threats, it should be classified as a hostile work environment claim" (citation omitted)).

### B. Hostile Work Environment

Under Title VII and the NYSHRL, "an employee seeking to bring a hostile work environment claim must show [1] that she . . . is a member of a protected class; [2] that she suffered unwelcome harassment; [3] that she was harassed because of her membership in a protected class; and [4] that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008); *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 65 (S.D.N.Y. 2020). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts look at the totality of the circumstances and examine factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Although "[t]he standard for a hostile work environment claim is a demanding one" and "Title VII is not intended to create a code of civility," *Scott v. Mem'l Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 599 (S.D.N.Y. 2002), the Second Circuit "ha[s] repeatedly cautioned against setting the bar too high," *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

> While a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered

7

> for the worse.  The environment need not be unendurable or intolerable.  Nor must the victim's psychological well-being be damaged.  In short, the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.

*Id.* (alteration, citations, emphasis, and internal quotation marks omitted).

The defendants argue that Rolley's hostile work environment claim fails for two reasons.  First, they say that Rolley describes only a "lone conversation" with Nole, an interaction that is not "severe" or "pervasive" enough to sustain a hostile work environment claim.  Docket Item 14-3 at 16.  Second, they say that Rolley's "characterization" of that interaction "is directly contradicted by" an incident report she filed and that the incident report "demonstrates that the conduct complained of amounted to, at most, harmless joking around."  *Id.* at 14-15.  This Court disagrees with both arguments.

First, Rolley clearly alleges more than one instance of harassment by Nole:  She describes an initial instance of harassment that occurred in February 2021, Docket Item 13 at ¶¶ 13-14, and then says that Nole continued to harass her and "make sexual comments and advances" after that, *id.* at ¶ 15.  Moreover, as noted above, she says that after she rejected Nole's advances, he berated her "with verbal scolding, unsubstantiated write-ups[,] and . . . false work performance comments[,] . . . creating a hostile work environment."  *See* Docket Item 16 at ¶ 7; *see also* Docket Item 13 at ¶ 15.  So the defendants' argument that Nole allegedly harassed Rolley only once fails.

The defendants' argument based on Rolley's incident report fares no better.[4] According to the incident report, Nole told Rolley that she seemed like she would be "a good time" when she was "drunk" and that she "should buy him a bourbon"; Rolley also reported that a supervisor named Larry heard this exchange. Docket Item 14-2 at 4-5. Those comments, viewed in the light most favorable to Rolley, easily sustain an inference that Nole's conduct was sexual and inappropriate—not merely "harmless joking" as the defendants contend. See Docket Item 14-3 at 15. And contrary to the defendants' argument, the incident report is not inconsistent with the complaint simply because the complaint includes allegations that the incident report does not. See id. at 14-15. It is plausible that Rolley's incident report did not describe everything that was said but only what Larry overheard, so the report provides no basis to contradict the complaint at this early stage.

In short, Rolley has plausibly alleged that she was subjected to severe and pervasive sexual harassment. The defendants' motion to dismiss her hostile work environment claim against Modern Disposal therefore is denied.

## III.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

"Under New York law, a plaintiff may establish a claim for negligent infliction of emotional distress in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (alterations omitted). Under the "bystander" theory, a plaintiff may recover for injures "resulting from [her]

---

[4] Rolley attached a copy of the incident report to her amended complaint, Docket Item 13 at 10-11, but sections of the report are cut off. The defendants submitted a complete copy of the report with their motion to dismiss. Docket Item 14-2.

contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in [her] presence." *Id.* (citation omitted). "Under the 'direct duty' theory, a plaintiff suffers emotional distress caused by [the] 'defendant's breach of a duty which unreasonably endangered [the] plaintiff's own physical safety.'" *Id.* (alteration and citation omitted). Beyond those two theories, "New York also recognizes a cause of action in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.'" *Id.* (alteration and citation omitted).

This Court previously found that Rolley's negligent infliction of emotional distress claim was subject to dismissal. Docket Item 8 at 20-22. More specifically, the Court determined that Rolley failed to plead facts establishing either "bystander" or "direct duty" liability, and it observed that "alleged workplace discrimination does not constitute special circumstances that confer a guarantee of genuineness under the third possible theory of recovery." *Id.* (citations and internal quotation marks omitted).

Nothing in Rolley's amended complaint—which alleges essentially the same facts that her original complaint alleged, *compare* Docket Item 1 at ¶¶ 17-23, *with* Docket Item 13 at ¶¶ 11-17—changes that analysis. What is more, Rolley's response to the motion to dismiss does not address her negligent infliction of emotional distress claim. *See* Docket Item 16. That claim therefore is dismissed.

**IV.     REMAINING CLAIMS AGAINST COPPOLA**

The defendants also have moved to dismiss all of Rolley's claims against Coppola.  Docket Item 14-3 at 21.  The remaining claims against Coppola are the NYSHRL claims for sexual harassment and retaliation.

"Under the NYSHRL, individual liability may be imposed if (1) a defendant has an ownership interest in the employer or, alternatively, has the authority to hire or terminate its employees; or (2) . . . a defendant aided and abetted the unlawful discriminatory acts of others."  *Mitura v. Finco Servs., Inc.*, 2024 WL 232323, at *11 (S.D.N.Y. Jan. 22, 2024) (citation and internal quotation marks omitted).

The defendants argue that the remaining claims against Coppola should be dismissed because Rolley's "lone factual allegation" about Coppola is that she reported Nole's harassment to him.  Docket Item 14-3 at 21.  It is true that Rolley does not allege that Coppola took other actions that contributed to her claims.  But she does allege that he was a "senior management employee . . . who had supervisory responsibilities governing [her] employment."  Docket Item 13 at ¶ 10.  In light of Rolley's *pro se* status, that is sufficient to raise a plausible inference that Coppola "ha[d] the authority to hire or terminate [Modern Disposal's] employees."  *See Mitura*, 2024 WL 232323, at *11; *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (citations and internal quotation marks omitted)).

The defendants' motion to dismiss the remaining claims against Coppola therefore is denied.

11

**CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss, Docket Item 14, is GRANTED in part and DENIED in part. The following claims are dismissed: (1) the claims under 42 U.S.C. §§ 1981-1983 and 1985; (2) the Title VII claims against Nole and Coppola; (3) the Title VII and NYSHRL sexual harassment claims based on a *quid pro quo* theory of liability; and (4) the negligent infliction of emotional distress claim. The following claims survive: (1) the Title VII hostile work environment and retaliation claims against Modern Disposal; and (2) the NYSHRL hostile work environment and retaliation claims against Modern Disposal, Nole, and Coppola.

The defendants shall answer the amended complaint within 21 days of the date of this order.

SO ORDERED.

Dated:  August 14, 2024
        Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE